[Crim. No. 7890. Second Dist., Div. Four. May 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND GEORGE SURPLICE et al., Defendants and Appellants.

[Crim. No. 7891. Second Dist., Div. Four. May 21, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD STEVEN PETERSON, Defendant and Appellant.

Minsky, Garber & Rudof and B. W. Minsky for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and George W. Kell, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—In an information filed by the District Attorney of Los Angeles County defendants Raymond George Surplice and Elizabeth Surplice were charged together with codefendant Joseph Lawrence Albany with having marijuana in their possession on January 16, 1961, in violation of section 11530 of the Health and Safety Code. Defendant Elizabeth Surplice was charged with a previous conviction of possessing a counterfeit obligation and conspiracy. Defendant Ronald Steven Peterson was charged with having marijuana in his possession on January 17, 1961, in violation of section 11530 of the Health and Safety Code. A prior conviction of violation of section 11500 of the Health and Safety Code, a misdemeanor, was also charged against defendant Peterson. At the preliminary hearing the two cases involving these defendants were consolidated for purposes of the hearing. The two cases were again consolidated in the superior court, being numbers 239042 and 239041. The latter information was designated as Count II of a consolidated information, and the information against the defendants Surplice as Count I. Motions to dismiss under section 995 of the Penal Code were denied.

The defendants entered pleas of not guilty and denied the prior convictions alleged. Trial was by the court, trial by jury having been duly waived by each defendant personally and by all counsel. The cause, pursuant to stipulation of defendants and counsel, was submitted to the court on the testimony contained in the transcript of the proceedings had at the pre-

liminary hearing. Both sides reserved the right to produce additional testimony. Counsel reserved all objections.

At the commencement of the trial the judge indicated for the record that he had read and considered the evidence produced at the preliminary hearing. After taking additional evidence in support of defendants' motion to dismiss and on the issues and after defendants Raymond George Surplice and Elizabeth Surplice took the stand in their own behalf, the court denied the motion and found each defendant guilty as charged. Defendant Ronald Steven Peterson was found guilty of the prior offense charged against him, probation was denied, and he was sentenced to the state prison for the term prescribed by law. As to defendant Elizabeth Surplice no action was taken on the related prior offense charged against her and she was sentenced to six months in the county jail. Defendant Raymond George Surplice was sentenced to ten months in the county jail.

Monty B. Madison, a Los Angeles police officer, testified that he made the arrest of the defendants on January 17, 1961, at 6170½ Santa Monica Boulevard, Los Angeles. The officer said he had been driving east on Santa Monica Boulevard and had stopped for a signal behind a black and white police car when he observed a man, later identified as defendant Peterson, running down the outside stairway of a building located at 6170 Santa Monica Boulevard. The lower portion of this building is a printing establishment. He further testified that previous to this incident a written bulletin had been circulated to all divisional officers of the Hollywood division to the effect that there was a burglar operating in this particular area in the late evening and early morning hours; this person was described as a male Caucasian approximately 32 years old; and on three occasions had been seen carrying a flight bag.

Officer Madison further testified he had worked in this area for about a year; was familiar with the crime rate in the area; this neighborhood has a high frequency of burglaries; and that he had been told by Lieutenant Hogan that "the burglars are knocking us dead in that particular area." When Officer Madison first saw Peterson, Peterson was running down the outside stairway at 6170 Santa Monica Boulevard, carrying a blue "flight bag," sometimes described as an "AWOL bag." This was at about 12:10 or 12:15 a. m. With the bag in hand Peterson ran to a 1951 Ford convertible, which was parked at the south curb of Santa Monica Boulevard, headed

in an easterly direction. He entered the right side of this vehicle. Officer Madison and his partner then drove in front of the Ford. The black and white police car, which had been in front of Madison's vehicle, pulled up behind the Ford. Madison approached Peterson and identified himself as a police officer. At the same time a uniformed police officer (Madison was in plain clothes in an unmarked vehicle) also approached Peterson. Peterson was asked to step out of the vehicle, which he did. Madison asked Peterson what was in the bag and Peterson stated that he did not know. Madison asked him where he got the bag and Peterson stated that he had just picked it up in "Ray's" apartment, indicating 6170½ Santa Monica.

Officer Wilson started walking toward the outside stairway as Officer Madison picked up the bag from the floor of the Ford. The latter looked inside the bag and noticed several brown paper sacks. He opened one of them and saw a large quantity of green leafy substance resembling marijuana and bearing the odor of marijuana. Defendant Peterson yelled "Ray, Ray, get the hell out of there. It is the cops." Wilson and Madison then ran to the head of the stairway and knocked on the door, identifying themselves as police officers and demanding entrance. They heard a scuffling noise and the sound of running feet, whereupon they entered and arrested the four people who were in the apartment. As they entered they saw Mr. and Mrs. Surplice running from the living room toward the kitchen. Mrs. Surplice had a small brown bottle in her right hand, which she placed on a small shelf above the sink. This bottle contained a green leafy substance, later identified as marijuana. Defendant Raymond George Surplice denied knowledge of any narcotics in the apartment, including the bottle found in the kitchen. He stated that he and his wife lived in the apartment and that Peterson had just left the apartment.

When interrogated at the police station defendant Peterson stated the marijuana in the flight bag was his own; that he "would buy the whole beef, stand up and plead guilty to the whole thing," if the officers would turn everyone else loose. He also said the reason he had yelled at Ray at the time of the arrest was because he had left a small Dristan bottle in the apartment with marijuana in it and he thought he might have left some other items of marijuana lying around.

A marijuana cigarette was found underneath the rear of the back seat of the black and white police vehicle. Defend-

ants Peterson and Raymond George Surplice had been seated in that seat on the way to the police station.

A motion to suppress the evidence upon the grounds of illegal search and seizure was made at the commencement of the trial. The motion to suppress was properly denied. Under the circumstances shown the police had reasonable and probable cause to interrogate defendant Peterson and to look inside the bag. When Peterson shouted a warning to others the police were entirely justified in entering the apartment.

The appeals are consolidated and all defendants contend that the evidence was obtained by means of an unlawful search and seizure.

We hold the evidence was legally obtained and the arrests were lawful under the provisions of Penal Code section 836 and the definition of what constitutes reasonable or probable cause to believe that the person to be arrested has committed a felony as set forth in *People* v. *Ingle,* 53 Cal.2d 407, 412-413 [2 Cal.Rptr. 14, 348 P.2d 577], and the cases cited therein.

''The courts of this state consistently have adhered to the proposition that a police officer may question a person outdoors at night when the circumstances are such as would indicate to a reasonable man in like position that such a course is necessary to the discharge of his duties [citations]. . . .'' (*People* v. *Ellsworth,* 190 Cal.App.2d 844, 846-847 [12 Cal.Rptr. 433].)

Defendant Raymond George Surplice contends the evidence is insufficient to sustain his conviction. This contention is devoid of merit. As the officers entered the apartment of the defendants Surplice they observed both the husband and wife running from the living room toward the kitchen. The defendant wife had a bottle in her hand which contained the marijuana herein involved. The defendant husband admitted he and his wife lived in the apartment; the narcotics were in his presence; the possession was immediate and accessible to him; and it was proper to conclude that this defendant had knowledge of the narcotics notwithstanding his denial, and that of his wife, of any knowledge of marijuana in the house.

''While it is necessary, on a possession charge, to show knowledge on the part of the defendant (*People* v. *Gory,* 28 Cal.2d 450 [170 P.2d 433]), such possession need not be exclusive, and may be shown by circumstances as well as by direct evidence, and may be constructive as well as physical.

(*People* v. *Torres*, 98 Cal.App.2d 189 [219 P.2d 480]; *People* v. *Brown*, 92 Cal.App.2d 360 [206 P.2d 1095]; *People* v. *Graves*, 84 Cal.App.2d 531 [191 P.2d 32]; *People* v. *Wong Fun*, 39 Cal.App.2d 211 [102 P.2d 774].)'' (*People* v. *Van Valkenburg*, 11 Cal.App.2d 337, 340 [244 P.2d 750].)

▉▉▉▉ At the probation and sentence hearing for defendants Raymond George Surplice and Elizabeth Surplice, the following transpired:

"THE COURT: Let me say, I have checked the file and I can tell from the notes in the file the sentence that Judge Evans has in mind. Generally, I feel that a defendant is entitled to be sentenced by the judge who found him guilty or accepted the plea. If that is satisfactory with you, I will, without making any pretense at evaluating this myself, just impose the sentence that Judge Evans had in mind.

"MR. MINSKY: That is satisfactory, your Honor. For the record, we would like to make a motion for a new trial on all of the statutory grounds for each defendant.

"THE COURT: In each case, it is denied. Now, with respect to Raymond George Surplice, do you waive arraignment? Is there any legal cause why sentence should not be pronounced?

"MR. MINSKY: There is no legal cause.

"THE COURT: As I say, it is clear that this is the sentence that Judge Evans indicated he was going to impose. This does not represent my independent judgment; is that understood?

"MR. MINSKY: Satisfactory.

"THE COURT: Is that satisfactory with you, Mr. Surplice?

"DEFENDANT RAYMOND SURPLICE: Yes sir, it is.

"THE COURT: The Court has read and considered the probation report. Probation is denied. The defendant is sentenced to serve ten months in the county jail. I note the Honor Farm is recommended. Apparently Judge Evans customarily makes that recommendation."

A serious question arises from the above exchange as to whether a judge in imposing sentence on a defendant can properly base his decision upon a tentative conclusion as to sentence indicated in the notes of the judge who tried the case.

The duty of the court with respect to imposing sentence on convicted defendants is enunciated in Penal Code sections 12 and 13 as follows:

"§ 12. The several sections of this code which declare certain crimes to be punishable as therein mentioned, devolve a duty

upon the court authorized to pass sentence, to determine and impose the punishment prescribed."

"§ 13. Whenever in this code the punishment for a crime is left undetermined between certain limits, the punishment to be inflicted in a particular case must be determined by the court authorized to pass sentence, within such limits as may be prescribed by this code."

It is well established in the law that the severity of the sentence and the placing of defendant on probation rest in the sound discretion of the trial court. (*People* v. *Johnson,* 9 Cal.App. 233 [98 P. 682].) It also is fundamental that the law contemplates an exercise of that discretion by the sentencing judge and in the absence of such exercise there has been no lawfully imposed sentence.

Judicial discretion is that power of decision exercised to the necessary end of awarding justice based upon reason and law but for which decision there is no special governing statute or rule. Discretion implies that in the absence of positive law or fixed rule the judge is to decide a question by his view of expediency or of the demand of equity and justice. (Bowers, Judicial Discretion of Trial Courts, 1931, § 10, pp. 14, 15.) The term implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason.

Discretion in this connection means a sound judicial discretion enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy or warped by prejudice or moved by any kind of influence save alone the overwhelming passion to do that which is just. (*Davis* v. *Boston Elevated R. Co.,* 235 Mass. 482 [126 N.E. 841].)

To exercise the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision. On that basis it gives latitude to the trial judge to express his own convictions in the declaration of rights and application of remedies. (*Gossman* v. *Gossman,* 52 Cal.App.2d 184, 194 [126 P.2d 178].) Under Penal Code section 1203, before imposing sentence the judge must consider the report of the probation officer and must make a statement that he has done so. This was done by the sentencing judge. However, he expressly negated any inference which might otherwise result from his consideration of the

probation report by his statements: ". . . without making any pretense at evaluating this myself . . ." and "This does not represent my independent judgment; . . ." A sentence imposed under these conditions is an abdication of the judge's duty to exercise judicial discretion. Therefore the sentence imposed is void.

What a judge may receive to influence his decision as to what sentence is to be imposed on a convicted defendant is strictly limited by statute. (Pen. Code, § 1204.)

The statute (Pen. Code, § 1204) demands that the duty of determining the question of aggravation or mitigation of punishment be performed with scrupulous fairness to the defendant. (*People* v. *Neal*, 97 Cal.App.2d 668, 676-677 [218 P.2d 556].)

Reliance by a judge, even in part, upon statements made out of court which the defendant has no opportunity to meet is a basis for reversal with directions to rearraign the accused for proper probation and sentence proceedings. (*People* v. *Giles*, 70 Cal.App.2d Supp. 872 [161 P.2d 623].) An invalid sentence is basis for remand for pronouncement of a proper sentence. (*In re Gilbert*, 97 Cal.App. 505 [275 P. 982].) Such a defective judgment is subject to being set aside by motion at any time (*People* v. *Stratton*, 133 Cal.App. 309 [24 P.2d 174]), therefore the fact that defendants do not raise the defect on this appeal is of no consequence.

 Also, although it appears that defendants attempted to waive the defect in the probation and sentence proceeding by agreeing that the judge impose sentence in accordance with the trial judge's notations, we do not consider that this constituted a waiver in fact because the defect was one which goes to the fundamental fairness of the proceeding.

Accordingly, for the reasons set forth above, those portions of the judgment relating to the conviction of the defendants and order denying new trial are affirmed. As to defendants Raymond George Surplice and Elizabeth Surplice, those portions of the judgment imposing the sentence are reversed with directions to rearraign the last-named defendants for imposition of a proper sentence; as to defendant Peterson, affirmed.

Burke, P. J., and Balthis, J., concurred.