**Eddie CANNON, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A05–0411–CR–622.**

Court of Appeals of Indiana.

Dec. 1, 2005.

Kimberly A. Jackson, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Eddie Cannon appeals from his conviction for Operating a Motor Vehicle after License Forfeited for Life,[1] a class C felony, and from the five-year sentence imposed by the trial court. In particular, Cannon contends that the trial court erred in: (1) admitting evidence of the police stop of Cannon in violation of the state and federal constitutions; and (2) sentencing him to an enhanced term of incarceration while impermissibly relying on ex parte communications with another judge, violating the rule announced in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Finding that the trial court improperly relied on ex parte communications in imposing Cannon's sentence but that such error was harmless, and finding no other error, we affirm the judgment of the trial court.

### *FACTS* [2]

On May 13, 2004, Indianapolis Police Officer Matthew Jennings was directing

1. Ind.Code § 9-30-10-17.

2. We held oral argument in this case on November 16, 2005, in Indianapolis. We com-

traffic at the entrance to the International School of Indiana on Michigan Road. The intersection did not have a traffic light, and the road was under construction. Consequently, Officer Jennings stood in the middle of the intersection, ordering vehicles traveling northbound and southbound to stop at intermittent times to allow drivers to enter and exit the school safely. The area was marked as a school zone.

Cannon was traveling southbound on Michigan Road when Officer Jennings put up his hand to signal to Cannon to stop. In the probable cause affidavit and in his direct testimony, Officer Jennings stated that he believed that Cannon was approximately 100 feet away from him when he ordered Cannon to stop. Officer Jennings clarified later on cross-examination that he believed that Cannon was approximately a football field's distance, or about 100 yards, away from him when he ordered Cannon to stop.

After Officer Jennings indicated to Cannon that he wanted the vehicle to come to a stop, Officer Jennings observed Cannon cross the double yellow line in the center of the road three times, nearly hitting a vehicle traveling northbound. Cannon's vehicle finally came to a "screeching halt" approximately fifteen feet from Officer Jennings. Tr. p. 7.

As Officer Jennings approached the vehicle, he observed Cannon attempt to hide a pint of gin between the vehicle's seats. The officer observed that Cannon had an odor of alcohol on his breath and person and that his speech was slurred. Accordingly, Officer Jennings ordered Cannon to proceed into the school parking lot for further investigation. Cannon complied, and as Officer Jennings approached Cannon's vehicle in the parking lot, the passenger of Cannon's vehicle threw the bottle of gin into a grassy area near the school. Officer Jennings asked Cannon to step out of his vehicle, noting that Cannon appeared unstable and that his passenger was unruly. The officer further noted that Cannon's eyes were glassy and bloodshot. Cannon refused a field sobriety test and blood, breath, and urine tests for intoxication. He was also belligerent and disruptive. Officer Jennings checked on the status of Cannon's driving privileges and discovered that his driver's license had been suspended for life.

On May 17, 2004, Cannon was charged with class C felony operating a motor vehicle after license forfeited for life, class A misdemeanor operating a motor vehicle while intoxicated, and class B misdemeanor public intoxication. A bench trial was held on September 23, 2004. Cannon moved to suppress the evidence acquired during the police stop, and the trial court denied his motion. The trial court found Cannon guilty of operating a motor vehicle after license forfeited for life and dismissed the remaining counts.

At Cannon's sentencing hearing on October 22, 2004, the trial court found the following mitigating circumstances: (1) Cannon's alcohol problem, and (2) the hardship on Cannon's wife if he were to be incarcerated. The trial court also found the following aggravating factors: (1) Cannon's criminal history, including a continued pattern of offenses involving operation of a motor vehicle, and (2) Cannon's need for rehabilitation provided by incarceration because he is likely to reoffend and because alternative programs have had no effect on his behavior. Specifically, the trial court detailed portions of Cannon's lengthy criminal history:

mend counsel for their able presentations. We also thank the Carmel High School students in attendance for their attention to and interest in the Indiana judicial system.

> I am just going to highlight a few of the convictions I find. First, in 1971, Disorderly Conduct, False Display of an Automobile Certificate, and not having an operator's license; in July 1976, you were convicted of not having an operator's license. In March of 1978 you were convicted of resisting the police; in April 1978 you were convicted of [operating a vehicle while intoxicated]; in May 1978 you were convicted of disorderly conduct. In June of 1982 you were convicted of public intoxication. In June of 1984 you were convicted of disorderly conduct. In January of 1988 you were convicted of being a habitual traffic violator. In January of 1992 you were convicted of operating a motor vehicle after having your license forfeited for life as well as [operating a vehicle while intoxicated].... In December 1994 in Hamilton County you were convicted of the same offense of operating a motor vehicle after having your license forfeited for life .... In November of 1997 you were, again, convicted of the same offense, operating a motor vehicle after having your license forfeited for life... Then in March of 2003 you were convicted once again of operating a motor vehicle while having your license forfeited for life.

Tr. p. 46–47. As a result of the March 2003 conviction, Cannon was sentenced to a four-year home detention sentence in the HOCCS[3] program. Tr. p. 45. He was still serving that sentence when he committed the offense at issue in this case. The trial court also made the following observation:

> I am giving you the benefit of the doubt [regarding the existence of an alcohol problem], and I am also finding that the imposition of a sentence in the Department of Correction would constitute a hardship on your wife. I know she wants you back. I know she has made a fervent plea on your behalf, but I am noting the Court's own hand notes from the Court 6 case that indicates on 7/25/03 and this is a direct quote from the judge, Judge Barker, "If he messes up off to DOC. Can't use his wife's hardship again." The prior judge gave me notice that you would likely bring your wife in here to make the same plea in an effort to get leniency.

Tr. p. 48–49. The trial court imposed a five-year sentence on Cannon, which is one year greater than the advisory sentence for a class C felony.[4] Cannon now appeals.

## *DISCUSSION AND DECISION*

Cannon contends that the trial court erred in denying his motion to suppress the evidence gathered at the police stop, in considering the ex parte communication from another judge regarding a former case of Cannon's, and in imposing an enhanced sentence in violation of *Blakely v. Washington.*

### *I. Motion to Suppress*

Cannon first contends that the trial court should have suppressed the evidence gathered at the police stop. As we consider this argument, we note that a trial court has broad discretion in ruling on

3. The record does not disclose what the HOCCS program is, but it appears to be a community corrections program.

4. Ind.Code § 35–50–2–6. This statute was amended in 2005 in relevant part as follows: "(a) A person who commits a Class C felony shall be imprisoned for a fixed term of ~~four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances.~~ between two (2) and eight (8) years, with the advisory sentence being four (4) years."

the admissibility of evidence. *Ransom v. State,* 741 N.E.2d 419, 421 (Ind.Ct.App. 2000), *trans. denied.* We will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id.* We will neither reweigh the evidence nor judge the credibility of witnesses but will instead consider all uncontroverted evidence together with the conflicting evidence in a light most favorable to the trial court's ruling, together with uncontested evidence favorable to the defendant. *Id.*

*A. Federal Constitution*

[4–6] Cannon contends that the warrantless police stop and the evidence gathered as a result of that stop violated the Fourth Amendment to the United States Constitution. The Fourth Amendment prohibits unreasonable searches and seizures by the government, and its safeguards extend to brief investigatory stops. *Moultry v. State,* 808 N.E.2d 168, 170 (Ind. Ct.App.2004) (citing *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). But a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if the stop is based upon specific and articulable facts together with rational inferences from those facts, the intrusion is reasonably warranted, and the officer has reasonable suspicion that criminal activity may be afoot. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

When determining whether the officer had reasonable suspicion, we examine the totality of the circumstances to conclude whether the officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744. The reasonable suspicion requirement is met where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Moultry,* 808 N.E.2d at 170.

Here, Cannon argues that the police stop was improper based upon inconsistencies in Officer Jennings's description of events. In the probable cause affidavit and during questioning by the State at trial, Officer Jennings testified that Cannon's vehicle was approximately 100 feet away from him when he held his hand up to inform Cannon to stop. After Cannon's attorney challenged Officer Jennings on cross-examination, Jennings then testified that Cannon was actually approximately 100 yards away, or "the length of a football field," from him, and apologized for the confusion: "I'm sorry about my yards and my feet, I had them mixed up." Tr. p. 9–10. Cannon concludes, based upon this inconsistency, that he was only 100 feet away from Officer Jennings when ordered to stop. Accordingly, Cannon argues that Officer Jennings's testimony that Cannon's vehicle swerved three times in "only 85 feet" is "inherently incredible," Appellant's Br. p. 11, and that even if some swerving occurred, it was understandable under the circumstances.

Initially, we note that Officer Jennings's initial stop of Cannon—by using a hand motion—was for the permissible purpose of directing traffic. Ind.Code § 9–21–8–1. Moreover, Officer Jennings's clarification that Cannon was 100 yards, rather than 100 feet, away from him when he ordered Cannon to stop merely created an issue for the factfinder to resolve. Cannon's request that we conclude that he was 100 feet, rather than 100 yards, away from Officer Jennings when ordered to stop is an invitation to reweigh the evidence, which we decline.

After Officer Jennings stopped Cannon for the purpose of directing traffic, he observed that Cannon was driving erratically—crossing the center line multiple times, nearly hitting another vehicle, and coming to an abrupt screeching halt—in a school zone and in an area that was under construction. Moreover, there was a police officer standing in the center of the road. Under those circumstances, Officer Jennings had reasonable suspicion to investigate the possibility of reckless driving by approaching Cannon's stopped vehicle. *See Smith v. State,* 713 N.E.2d 338, 342 (Ind.Ct.App.1999), *trans. denied* (concluding that a police officer may stop a vehicle when he observes a minor traffic violation).

As Officer Jennings approached Cannon's vehicle, he observed Cannon attempt to place a bottle of gin between the seats and noted an odor of alcohol on Cannon's breath and person, creating reasonable suspicion to believe that Cannon was driving while intoxicated. This reasonable suspicion justified Officer Jennings's order that Cannon pull his vehicle into the school parking lot. Because Officer Jennings was permitted to order Cannon to stop for the purpose of directing traffic and because the officer had reasonable suspicion to approach Cannon's stopped vehicle and, subsequently, to order Cannon to pull into the school parking lot, neither the police stop nor the evidence gathered as the result thereof violated the Fourth Amendment.

### *B. Indiana Constitution*

Cannon also argues that the police stop was unreasonable under Article I, Section 11 of the Indiana Constitution. The purpose of that provision is to "protect from unreasonable police activity, those areas of life that Hoosiers regard as private," and we construe Section 11 liberally. *Brown v. State,* 653 N.E.2d 77, 79 (1995). We apply a separate and distinct analysis to claims of unreasonable seizures under the Indiana Constitution than we do under the United States Constitution, requiring that the State bear the burden to establish that, in the totality of circumstances, the intrusion was reasonable. *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999). For a detention to be reasonable, the police officer must reasonably suspect that the individual is engaged in, or about to engage in, illegal activity. *Id.*

Cannon again contends that it was Officer Jennings's actions—forcing Cannon to come to a complete stop in a short distance—that caused Cannon's driving to be erratic. Cannon also emphasizes again that Officer Jennings changed his story midway through the trial by clarifying that Cannon was 100 yards rather than 100 feet away from him when he signaled to Cannon to stop his vehicle.

As noted above, Officer Jennings was entitled to order Cannon to stop his vehicle for the purpose of directing traffic. *Peete v. State,* 678 N.E.2d 415, 419 (Ind.Ct.App. 1997), *trans. denied.* After ordering Cannon to stop, the officer noticed Cannon driving erratically, and after approaching Cannon's vehicle, the officer observed Cannon attempt to hide a bottle of gin and noticed an odor of alcohol on Cannon's breath and person. Under these circumstances, we conclude that Officer Jennings's stop of Cannon was a reasonable intrusion that did not violate Article I, Section 11 of the Indiana Constitution.

## *II. Sentence*

Cannon next argues that the trial court erred in imposing an enhanced sentence upon him. In particular, he argues that the trial court erred in relying on ex parte communications with another judge and that his sentence violates the rule announced in *Blakely v. Washington.*

As we consider these arguments, we note that sentencing determinations are within the sound discretion of the trial court, and we will only reverse for an abuse of discretion. *Krumm v. State,* 793 N.E.2d 1170, 1186 (Ind.Ct.App.2003). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

Before imposing an enhanced sentence upon the defendant, the trial court must identify aggravating and mitigating circumstances, state the specific reason why each circumstance is aggravating or mitigating, and demonstrate that it has weighed the aggravating and mitigating circumstances and concluded that the aggravators outweigh the mitigators. *Boner v. State,* 796 N.E.2d 1249, 1255 (Ind. Ct.App.2003). A trial court is not obligated to weigh a mitigating factor as heavily as the defendant requests. *Smallwood v. State,* 773 N.E.2d 259, 263 (Ind.2002). A single aggravating factor may support the imposition of both an enhanced and consecutive sentence. *Payton v. State,* 818 N.E.2d 493, 496 (Ind.Ct.App.2004), *trans. denied.*

*A. Ex Parte Communications*

As noted above, in imposing Cannon's sentence, the trial court considered notes made by another judge who handled Cannon's sentencing for a previous conviction. The judge on one of Cannon's prior convictions, Judge Barker, made the following notes in Cannon's file: " 'If he messes up off to DOC. Can't use wife's hardship again." ' Tr. p. 49. The trial court in the current matter interpreted that to mean that "[t]he prior judge gave me notice that you would likely bring your wife in here to make the same plea in an effort to get leniency." *Id.*

According to Cannon, the trial court's reliance on those notes violated Indiana Judicial Canon 3(B)(8), which provides that a "judge shall not initiate, permit or consider ex parte communications made to the judge outside the presence of the parties, concerning a pending or impending proceeding ...." Cannon argues that the trial judge should have recused himself, acknowledging that the law presumes that a judge is unbiased and unprejudiced, *James v. State,* 716 N.E.2d 935, 940 (Ind.1999), but emphasizing that Indiana has always leaned toward recusal when reasonable questions about impartiality exist. *Tyson v. State,* 622 N.E.2d 457, 460 (Ind.1993). The test for recusal is whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality. *James,* 716 N.E.2d at 940. Cannon contends that the information contained in the notes was highly prejudicial and "devastating," Appellant's Br. p. 17, to his plea for leniency based on his wife's illness. Accordingly, he argues that the trial judge should have recused himself. Cannon also argues that even if the trial judge need not have recused himself, he should not have considered the notes left by the previous trial judge because they are prejudicial and improper ex parte communications.

Initially, we observe that Cannon did not object to the trial court's use of this information at his sentencing hearing. While we are sympathetic to Cannon's argument that it was pointless to object because this information was revealed as the trial court handed down his sentence, it was nonetheless his obligation to do so. Additionally, Cannon presents no evidence that lodging an objection would have been in any way futile. Thus, having failed to object to the trial court's use of this information, Cannon has waived the argument

for our review. *See Robles v. State,* 705 N.E.2d 183, 187 (Ind.Ct.App.1998) (observing that a party may not sit idly by, permit the court to act in a claimed erroneous manner, and then attempt to take advantage of the alleged error at a later time).

Waiver notwithstanding, we turn next to the State's arguments that the notes do not constitute ex parte communication. Judicial Canon 3(B)(8) defines ex parte communications as any "communications made to the judge outside the presence of the parties ...." This definition does not limit itself to communications between counsel and the court, as suggested by the State. It is apparent to us that notes left by a judge regarding a defendant that are then read by a subsequent judge who is preparing to sentence that same defendant in a different matter clearly constitute improper ex parte communication. We cannot, therefore, condone the trial court's use of the notes left by Judge Barker regarding Cannon's wife. Additionally, we note that even if the trial court was entitled or required to consider the risk that Cannon would reoffend, *see* Ind. Code § 35-38-1-7.1,[5] it should not have considered evidence outside the record in making its determination. *See Hulfachor v. State,* 813 N.E.2d 1204, 1207-08 (Ind.Ct. App.2004) ("we strongly caution trial courts against looking outside the record for evidence in a sentencing hearing").

Even though the trial court erred in considering the notes left by Judge Barker, however, such error may have been harmless. Initially, we observe that Cannon has presented no evidence suggesting that an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality such that he should have recused himself. To the contrary, the record reveals that the trial court included Cannon's wife's disability as a mitigating circumstance even though Judge Barker's notes explicitly cautioned him not to. Under these circumstances, it is apparent to us that the trial court remained impartial and need not have sought recusal as a solution.

Although the trial court was entitled to remain in place to impose Cannon's sentence, it should not, as noted above, have considered Judge Barker's notes in the process. But the error was harmless inasmuch as the trial court did not heed the information contained in the notes. Indeed, while Judge Barker cautioned that " 'If he messes up off to DOC. Can't use his wife's hardship again,"' Tr. p. 48-49, the trial court here *did* consider Cannon's wife's disability to be a mitigating circumstance.

Moreover, after examining Cannon's extensive criminal history, as set forth herein, it is apparent to us that Judge Barker's notes did not influence the trial court in imposing Cannon's sentence. Cannon's past crimes alone are sufficient to warrant the enhanced sentence that he received. In addition, while the trial court could have enhanced Cannon's sentence by an additional four years, it chose to impose only a one-year enhancement. I.C. § 35-50-2-6. Given Cannon's criminal history, and given the fact that he was still serving a portion of his sentence for a 2003 conviction for operating a motor vehicle with license suspended for life when arrested and convicted for the *same* offense, the trial court would have been well within its authority to impose the full four-year enhancement upon Cannon's sentence. Thus, we con-

5. The statute was amended in 2005 and no longer mandates consideration of these elements.

clude that while the trial court erred in considering the ex parte communication, the error was harmless inasmuch as the trial court considered hardship to Cannon's wife to be a mitigating circumstance and imposed a relatively lenient sentence on Cannon given the underlying circumstances.

*B.* Blakely v. Washington *Challenge*

Finally, Cannon contends that the trial court's reliance upon the notes left by the previous trial judge violated the rule announced by the United States Supreme Court in *Blakely v. Washington.* The *Blakely* court applied the rule set forth in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)—"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt"—and found the sentencing scheme at issue did not pass constitutional muster. *Blakely,* 124 S.Ct. at 2535; *Apprendi,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). "The relevant statutory maximum for *Apprendi* purposes is the maximum a judge may impose based solely on the facts reflected in the jury verdict or admitted by the defendant." *Blakely,* 124 S.Ct. at 2537.

Our Supreme Court recently addressed the effect of *Blakely* on Indiana's sentencing scheme. *Smylie v. State,* 823 N.E.2d 679 (Ind.2005). The *Smylie* court concluded that portions of Indiana's sentencing scheme as it then existed violated a defendant's Sixth Amendment right to a trial by jury. To bring Indiana's sentencing scheme into compliance with *Blakely,* courts may use fixed presumptive terms, but a jury must find any facts in aggravation. *Id.* at 683–84.

Cannon contends that the trial court's consideration of the notes left by the previous trial judge violate the *Blakely* rule inasmuch as the notes contained facts not found by a jury. First, we observe that Cannon failed to raise an objection based upon *Blakely* before the trial court. Cannon's sentencing hearing occurred on October 22, 2004, nearly four months after the *Blakely* rule was announced on June 24, 2004. Consequently, it was incumbent upon Cannon to raise an objection based on *Blakely,* and as he did not, he has waived the argument. *Clark v. State,* 829 N.E.2d 589, 590 (Ind.Ct.App.2005) (holding that defendant who was sentenced two months after *Blakely* was handed down forfeited *Blakely* claim when he never objected to his sentence at the sentencing hearing).

Waiver notwithstanding, we must again examine whether, even if the trial court impermissibly considered the notes, the error was harmless given Cannon's criminal history. A trial court may consider a defendant's criminal history without violating the *Blakely* rule, and it is apparent to us that Cannon's extensive criminal history alone would support the enhancement of his sentence by one year. *See Powell v. State,* 769 N.E.2d 1128, 1135 (Ind.2002) (holding that a maximum sentence may be imposed based upon a single aggravating factor). Moreover, we note again that even though the notes left by the previous trial judge indicated that Cannon's wife's plea for leniency should not again be considered a mitigating factor, the trial court here did, in fact, include hardship to Cannon's wife as a mitigating circumstance. Based on that result, we conclude that any error was harmless.

The judgment of the trial court is affirmed.

RILEY, J., and CRONE, J., concur.