ATTORNEY FOR APPELLANT
Kimberly A. Jackson
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Steve Carter
Attorney General of Indiana

Maureen Ann Bartolo
Deputy Attorney General
Indianapolis, Indiana

# In the
# Indiana Supreme Court

_____

No. 49S05-0705-CR-210

EDDIE CANNON,

*Appellant (Defendant below),*

v.

STATE OF INDIANA,

*Appellee (Plaintiff below).*

_____

Appeal from the Marion Superior Court, Criminal Division 3, No. 49G03-0405-FC-83515
Master Commissioner Jeffrey Marchal, Judge *Pro Tempore*

_____

On Petition to Transfer from the Indiana Court of Appeals, No. 49A05-0411-CR-622
_____

**May 22, 2007**

**Shepard, Chief Justice.**

Eddie Cannon was convicted of operating a vehicle after his license was forfeited for life and was sentenced to five years in prison. The Court of Appeals affirmed the conviction and sentence. Cannon v. State, 839 N.E.2d 185 (Ind. Ct. App. 2005). We grant transfer solely to address a claim about *ex parte* communication.

**Background and Case History**

In 2003, in a case not on appeal here, Cannon was convicted in the Marion Superior Court, Criminal Division 6, for operating a vehicle after his license was forfeited for life and operating a vehicle while intoxicated. Cannon pled guilty, and, on July 25, 2003, Judge *Pro Tempore* Jane Barker sentenced him to four years on home detention through "HOCCS," a community corrections enterprise to which Marion County courts sometimes refer offenders. On that date, Judge Barker wrote a note in the case file, which read: "'If he messes up off to DOC. Can't use his wife's hardship again.'" (Tr. at 48-49.)

In May 2004, Cannon was arrested again and charged in the Marion Superior Court, Criminal Division 3, the case ultimately leading to this appeal. The State again charged him with operating a motor vehicle after his license was forfeited for life, with operating a motor vehicle while intoxicated, and with public intoxication, any of which were in violation of his probationary sentence from Judge Barker's Division 6 case. On October 22, 2004, Judge *Pro Tempore* Jeffrey Marchal presided over Cannon's bench trial and found him guilty of operating a motor vehicle after his license was forfeited for life.

Cannon's wife testified at the sentencing hearing before Judge Marchal. She described her physical condition and said, "I need my husband . . . if you could just find a way or something to let my husband come back home because I need him back. . . . You know, some kind of mercy. Some kind of mercy for my husband, please." (Id. at 41-42.) Cannon testified, "I admit I was wrong for driving that particular day. . . . [M]y wife was having an asthma attack . . . [a]nd I just ask if the Court could find a way, you know, if I could be reinstated at HOCCS . . . if I could continue to . . . take care of my wife." (Id. at 42-43.)

Judge Marchal told Cannon he had considered the evidence at trial and at the sentencing hearing, the information in the pre-sentence report, and the arguments of counsel. He recited the aggravating and mitigating factors, finding the clearest aggravating factor to be Cannon's criminal history, which included among other things a 1992 conviction for operating a vehicle after a lifetime forfeiture for which Cannon was sentenced to home detention, a 1994 conviction for the same offense for which Cannon was sentenced to Community Corrections, and a 1997

2

conviction for the same offense for which Cannon again was sentenced to Community Corrections. Judge Marchal then said:

> Then in March of 2003 you were convicted once again of operating a motor vehicle while having your license forfeited for life. You were given four years in the HOCCS program, and you were serving that sentence out of Criminal Court 6 when you committed this offense. All of those things tell me that your likelihood of re-offense is high. In fact, I would put it at automatic. . . . I find that you have had the benefit of alternative programming consistently, but it has had no effect on your behavior. . . . As a mitigating factor I do find . . . that you have an alcohol problem . . . and I am also finding that imposition of a sentence in the Department of Correction would constitute a hardship on your wife. I know she wants you back. I know she has made a fervent plea on your behalf, but I am noting the Court's own hand notes from the Court 6 case that indicates on 7/25/03 and this is a direct quote from the judge, Judge Barker, "If he messes up off to DOC. Can't use his wife's hardship again." The prior judge gave me notice that you would likely bring your wife in here to make the same plea in an effort to get leniency. Sir, I don't want to do what I am about to do to you, but I can't avoid it . . . . I believe the aggravators far, far, far outweigh the mitigators . . . . I am sentencing you to a term of five years in the Indiana Department of Correction . . . . Your sentence must run consecutive to any sentence you are serving or must serve.

(Id. at 47-49.)

On appeal, Cannon argued that Judge Marchal's reference to Judge Barker's note was an improper *ex parte* communication. Although the Court of Appeals affirmed the conviction and sentence, the panel concluded that Judge Marchal's reference to the note was an improper *ex parte* communication and a violation of Canon 3B(8) of the Code of Judicial Conduct. Cannon, 839 N.E.2d at 194. We conclude otherwise. Judge Barker's note was not an *ex parte* communication, and Judge Marchal did not violate the Code of Judicial Conduct.

**The Rule Against *Ex Parte* Communications**

To be sure, the Court of Appeals was correct that improper *ex parte* communications are not necessarily limited to communications between judges and lawyers or parties. A judge may not hear from another judge, any more properly than from a lawyer or anyone else, facts or information about a case, nor may a judge allow another to affect the judge's impartiality and

3

independence. However, it is not so that "any" communication about a case outside the presence of the parties is improperly *ex parte,* and Canon 3B(8) does not include that language. See Ind. Judicial Conduct Canon 3B(8).

Judges may certainly seek each other's counsel in the performance of their judicial duties. Canon 3 sets out as an exception to the prohibition against *ex parte* communications consultations "with court personnel and others whose function is to aid the judge in carrying out the judge's adjudicative responsibilities, *or with other judges*." Id. at 3B(8)(c) (emphasis added). In fact, we encourage judges to rely on one another for advice and consultation. Although this notion certainly encompasses the discussion of abstract legal issues, it does not preclude discussions that touch on a particular case. A judge is not required to couch an inquiry or discussion in abstract terms when particular facts and circumstances, in reality, are central to the topic.

Thus, judges may confer about specific cases in furtherance of their adjudicative responsibilities without violating the rule against *ex parte* communications. In People v. Hernandez, 206 Cal. Rptr. 843 (Cal. Ct. App. 1984), the sentencing judge consulted with another judge to determine how properly to sentence Hernandez. In response to the assertion that this was an improper *ex parte* communication, the court cited commentary in the California Code of Judicial Conduct similar to our Canon 3B(8)(c) and said: "The commentaries to the canons of judicial conduct recognize, as we do, that discourse between judges such as occurred in the instant case is not inconsistent with public expectations of the decision-making process or erosive of public confidence in the judiciary." Id. at 850. In McKenzie v. State, 583 N.W.2d 744 (Minn. 1998), the trial judge had decided to impanel an anonymous jury after a meeting with other judges presiding over McKenzie's co-defendants' cases. As the McKenzie court wrote:

> McKenzie has not cited any authority for the proposition that a judge may not discuss potential issues with a judicial colleague in the absence of the parties. We believe it is inherently a judge's role to assist colleagues in performing their adjudicative responsibilities . . . . Our system of justice would suffer greatly if judges could not discuss cases with, solicit input from, and benefit from each other's richly varied experiences.

Id. at 748.

4

Of course, improper *ex parte* contacts are among the most pernicious of ethical violations. The opportunity for all sides to be heard is at the heart of our adversarial system. In re Ettl, 851 N.E.2d 1258, 1260 (Ind. 2006). Improper *ex parte* communications undermine the fairness of the case at hand, and they threaten the reputation of the legal profession and the integrity of our system of justice. Id. A judge may not permit the receipt of extra-judicial information about a case from anyone, including a colleague. A judge may not provide or entertain case-specific facts or allegations and, in every case, must exercise independent judgment. This does not preclude a judge from engaging in objective discussions with other impartial judges in furtherance of the deliberative or contemplative process. A judge may confer with another for guidance or advice.

**This Case**

The Court of Appeals premised its conclusion that Judge Marchal should not have read or considered Judge Barker's note in the Court 6 file on the idea that the Court 6 case was a different matter from Cannon's sentencing hearing and that Judge Marchal looked beyond the record of the Court 3 case when he read Judge Barker's handwritten note, calling it an *ex parte* communication from one judge to another. Cannon, 839 N.E.2d at 194. However, the limited record before us seems adequate to demonstrate that Judge Marchal had an adjudicative responsibility over both the Court 6 case and the Court 3 case at the hearing from which this appeal arises.

When Judge Marchal found Cannon guilty in the Court 3 matter and set a sentencing date, Cannon asked him to reinstate his bond. Judge Marchal inquired if Cannon was "non-suspendible" and Cannon's attorney and the State told him, in essence, that Cannon still was serving the sentence to HOCCS. Judge Marchal remanded Cannon to custody and said, "And, if you could just alert HOCCX [sic] and they can deal with that violation on that date as well." (Tr. at 34-35.) Thus, as the State noted in its Response in Opposition to Transfer, the parties had notice that Judge Marchal would handle Cannon's HOCCS violation at a hearing set for October 22, 2004. (Appellee's Response in Opposition to Transfer at 3.)

5

And so it came to pass. On October 22nd, Judge Marchal called the Court 3 case and the "companion case, 03036935," referring to the HOCCS violation originally docketed in Court 6. In fact, a representative from the HOCCS program was present for the hearing. (Tr. at 39-40.) The transcript suggests that Judge Marchal completed a disposition of the Court 3 matter, including the requirement that the sentence be consecutive to any sentence in the Court 6 case, and then moved on to the Court 6 disposition. (Tr. at 49-51); Ind. Code Ann. § 35-50-1-2(d)(1) (West 2007).

Inasmuch as Judge Marchal was performing judicial functions with respect to both Cannon's cases, the Court 6 case file was properly before the court as part of the record, not as an external communication. Reliance on hand-written notes, even a judge's notes, can pose some risk, of course, and we do not have the benefit of a transcript of the original Court 6 sentencing hearing. But, Cannon does not dispute that Judge Barker entertained his hardship plea at the 2003 sentencing. Judge Marchal was entitled to note that fact. If the transcript itself had been in the file and Judge Marchal referred to it instead of to Judge Barker's note, no possible argument could be made that it should have been ignored. See generally Sanders v. State, 782 N.E.2d 1036, 1038 (Ind. Ct. App. 2003) (citing Owen v. State, 272 Ind. 122, 129, 396 N.E.2d 376, 381 (1979)). Cannon cannot be heard to complain that, when he asked for yet another alternative sentence based on his wife's hardship, Judge Marchal did not turn a blind eye to the fact that Cannon successfully made the same plea during a prior hearing on a case in which Judge Marchal was ruling at that moment.

### Conclusion

The Court of Appeals otherwise appropriately disposed of Cannon's allegations of error. Ind. Appellate Rule 58(A). We affirm the judgment of the trial court.

Dickson, Sullivan, Boehm, and Rucker, JJ., concur.