STATE of Indiana, Appellant–Respondent,

v.

Shayla L. SHACKLEFORD, Devonna T. McDonald, Appellees–Petitioners.

No. 10A01–0907–PC–353.

Court of Appeals of Indiana.

March 10, 2010.

Rehearing Denied May 11, 2010.

---

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Juliet Yackel, J. Randal Wexler, Sha Hua, Sidley Austin LLP, Steven A. Drizin, Bluhm Legal Clinic, Chicago, IL, Attorneys for Appellees.

## OPINION

BAKER, Chief Judge.

Appellant-respondent State of Indiana brings this interlocutory appeal challenging the post-conviction court's denial of its motion for change of judge. Specifically, the State contends that various comments made by the trial judge at a status conference regarding matters involving appellees-petitioners Shayla L. Shackleford and Devonna T. McDonald (collectively, the petitioners) revealed a lack of impartiality that precludes him from taking future action in the case.

We conclude that the post-conviction court's preliminary legal assessment of the case that was based upon the evidence in the record and the pleadings and memoranda filed in the case did not amount to personal bias or prejudice on the part of the judge that would render a fair judgment on the merits of the case impossible. Therefore, we find that the post-conviction court properly denied the State's motion for change of judge.

The judgment of the post-conviction court is affirmed, and we remand this cause for further proceedings consistent with this opinion.

## FACTS

In 1997, fourteen-year-old Shackleford and fifteen-year-old McDonald were tried as adults and convicted by a jury of class A felony attempted murder, class A felony conspiracy to commit murder, and class A felony robbery. The convictions stemmed from the petitioners' luring of a pizza delivery man to a home so that they could steal his car and drive to Alabama. When the delivery man arrived, Shackleford and McDonald each stabbed him twice before running to his car and driving away.

On December 15, 1997, the petitioners were sentenced by Judge Jerome Jacobi and each received consecutive sentences of thirty years for attempted murder and thirty years for robbery, for a total sentence of sixty years. In a consolidated direct appeal, we affirmed the Petitioners' convictions and sentences in an unpublished memorandum decision.[1]

On February 11, 2009, the Petitioners filed a petition for post-conviction relief, claiming ineffective assistance of appellate counsel for failing to: (1) raise a double jeopardy claim; (2) cite the petitioners' youth as a significant mitigating factor at the sentencing hearing; and (3) argue that the sentence constituted cruel and unusual punishment. The State filed its response and asserted the defenses of res judicata and waiver.

Because the regular presiding Judge, Vicki Carmichael, had represented McDonald on appeal, she disqualified herself on February 20, 2009, and appointed Senior Judge Steven M. Fleece to preside over the petitioners' post-conviction proceed-

1. *Shackleford v. State,* No. 10A05–9804–CR–212, 1999 WL 241213 (Ind.Ct.App. Apr. 19, 1999).

ings. On May 8, 2009, Judge Fleece conducted a non-recorded status conference in chambers with counsel for both Petitioners and the prosecuting attorney present. The purpose of the conference was "to examine potential areas of agreement relevant to the resolution of [the post-conviction relief] petitions." Appellant's App. p. 96.

Before the settlement conference began, Judge Fleece voluntarily disclosed to the parties a recent, brief conversation that he had had with Judge Jacobi. Judge Fleece reported that a chance encounter occurred when he saw Judge Jacobi at a deceased colleague's funeral visitation. According to Judge Fleece, Judge Jacobi told him that he would not be "personally offended" if the petitioners' sentences were modified, that he favored a modification of the sentence, and that he had expressed that view to the prosecutor. Although Judge Fleece stated that he felt obliged to report the conversation, he determined that the conversation would not affect his objectivity in the case.

Three days later, the State filed a motion for a change of judge, claiming that Judge Fleece had made various comments during the status conference that revealed a bias in favor of releasing the Petitioners. In particular, the State asserted that Judge Fleece had made the following improper remarks about the case:

A. The trial of this case was very "divisive" and the release of the defendants from prison was necessary to accomplish a "healing" in our community;

B. The Defendants have served enough time in prison and should be released, the only question is how we get there;

C. "Everybody" believed that the sentences in this case were too harsh and that the [Prosecutor] would receive no negative feedback from the community if

he reached an agreement to reduce the sentences;

D. That he (Judge Fleece) had recently spoken at length with trial Judge Jerome Jacobi about the case and knew that Judge Jacobi would be called as a witness by Defendants during the post conviction proceedings, that Judge Jacobi had written a 20–page memorandum in favor of Defendants, and that he (Judge Fleece) had not only read the memorandum but also suggested to Defendants to have it made part of the record.

Appellant's App. p. 69. The State further alleged that

During this conference, Judge Fleece admitted that he had prejudged the case in favor of the defendants, in spite of the fact that the State of Indiana had not yet been permitted to present evidence or argument to rebut the allegations contained in the Petition for Post–Conviction Relief.

*Id.* at 70.

Thereafter, the Petitioners filed a joint response in opposition to the State's motion and asserted that Judge Fleece had only engaged in a "frank discussion" regarding the merits of the petitions and the conversation reflected the judge's "conclusion that some of Petitioners' arguments (but not others) had merit." *Id.* at 79.

Judge Fleece denied the State's motion for change of judge on June 11, 2009. In the ruling, Judge Fleece admitted making the statements offered by the State as evidence of bias and found that the State "correctly inferred that the judge [Judge Fleece] now views sentence modification as desirable." *Id.* at 99. Judge Fleece observed that this was just a "preliminary conclusion" that was based on the pleadings and undisputed facts of the case. *Id.* However, Judge Fleece determined that the State had "misstated, mischaracterized

and taken out of context statements made by the judge in chambers." *Id.* at 96. Specifically, Judge Fleece found that

> [T]he judge never said that he had read the sentencing judge's twenty page memo in favor of now reducing the sentence. The judge has not ... laid eyes on such memo, although he is ... aware of its existence.
>
> If neither party intends to refer to or rely upon such memo, it will remain unseen by the Court in this proceeding.
>
> The judge did of his own volition report to the parties a conversation with the sentencing judge prior to the conference. Contrary to the State's characterization, this was not a conversation "at length...." The conversation, of a few minutes at most, was entirely incidental to the purpose of both judges to pay respects to the family of a deceased county government colleague.
>
> The State's allegation that the judge has "conducted a personal and independent investigation of the case by conversing at length with trial Judge Jacobi, a witness for the defense," is a gross mischaracterization of the facts. [The] Statement in Opposition [to the] Motion for Change of Judge establishes that Judge Jacobi will not be a witness. The meeting and conversation was brief, occurred by accident, and was promptly and voluntarily revealed.
>
> For one judge to indicate to another that he would not be personally offended by a modification of his prior sentence, if the reviewing judge saw fit, is simply a matter of judicial courtesy emphasizing the discretion of the reviewing judge.
>
> In any event, the sentiments expressed at the conference are not the result of any improper influence from any source but were rather the results of the judge's analysis of the legal arguments expressed in the pleadings and consideration of certain undisputed facts.
>
> The Court was entitled to take [the] undisputed facts into account, as well as the pleadings filed before the conference in forming the preliminary analysis expressed to the parties at the conference. Prior to the conference the Court properly read and considered the fifty-three page ... petition for post conviction relief, with legal arguments and cited authorities as well as roughly two hundred pages of exhibits, including affidavits.... The State has mistaken legal analysis for prejudice and is seeking a change of judge because the court's preliminary analysis is in certain respect favorable to the Petitioners.
>
> The State overlooks the fact ... that at the same conference the Court announced other results of its legal analysis unfavorable to the Petitioners. Specifically, the Court announced that Petitioners' argument that this Court should hold that the Indiana Supreme Court violated the U.S. Constitution in the handling of this case would not be fruitful at this level of review.
>
> Contrary to the State's recollection, the Court did not indicate that the only question is "how we get there." The question is if we get there. "There" represents a sentence modification.
>
> The State has correctly inferred that the judge now views sentence modification as desirable. This is a preliminary conclusion not based on any bias or prejudice or outside influence but upon analysis of the pleadings and undisputed facts of the case. In particular the Court has noted the youth of the offenders at the time of the crime, the irrationality and immaturity evident in the nature of the offense....
>
> The Court is highly aware of the limits of its discretion.... In the final analy-

sis, if the State is not inclined to agree to a modification of sentence, it remains entirely possible that the State's ... Answer may trump the Petitioner's voluminous pleadings. If the law relevant to post-conviction proceedings requires denial of the Petitions, they will be denied. Making decisions that cause results contrary to what the judge would do if he had unlimited discretion is part of the daily business of judging.

The Court therefore finds and concludes:

That the "historical facts" cited by the State are inaccurate in certain details, mischaracterized and taken out of context.

*Id.* at 98–99. Judge Fleece then concluded that he holds no "personal bias or prejudice" against any party, and that "there is no impediment to fair judging." *Id.* at 99. This interlocutory appeal ensues.

## DISCUSSION AND DECISION

■ In addressing the State's claim that the post-conviction court erred in denying its motion for change of judge, we note that Post Conviction Rule 1(4)(b) provides that "[a] change of judge shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice." Our Supreme Court has commented that

The provisions for change of judge in post-conviction cases are neither "automatic" as might be said under Trial Rule 76(B) nor "discretionary" as under Indiana Criminal Rule 13.[2] Instead ... the rule requires the judge to examine the affidavit, treat the historical facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice.

*State ex rel. Whitehead v. Madison County Circuit Court,* 626 N.E.2d 802, 803 (Ind. 1993). Moreover, we note that a motion for change of judge should be granted only if the evidence "reveal[s] such a high degree of favoritism or antagonism as to make fair judgment impossible." *Sturgeon v. State,* 719 N.E.2d 1173, 1182 (Ind. 1999).

■ There is no question that the law presumes that a judge is unbiased and unprejudiced. *O'Connor v. State,* 789 N.E.2d 504, 511 (Ind.Ct.App.2003). Disqualification is not required under the rule "unless the judge holds a *personal* bias or prejudice." *Pruitt v. State,* 903 N.E.2d 899, 939 (Ind.2009) (emphasis in original).

■ The Indiana Code of Judicial Conduct (Judicial Code) requires judges to perform all duties of that office "fairly and impartially" and without "bias or prejudice." Ind. Judicial Conduct Canon 2(A), Rule 2.2, --2.3. In fact, a judge is required by the Judicial Code to disqualify himself from any proceeding in which his impartiality "might reasonably be questioned[.]" *Id.* Rule 2. The test for determining whether a judge should recuse himself is "whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality." *James v. State,* 716 N.E.2d 935, 940 (Ind.1999).

■ Judges are permitted to seek each other's counsel and advice even about the specific facts and circumstances of a particular case. *Cannon v. State,* 866 N.E.2d 770, 773 (Ind.2007). More specifically, a judge may communicate with other judges "provided the judge makes reasonable efforts to avoid receiving factual infor-

---

**2.** The Change of Judge provision with regard to bias and prejudice is currently set forth in Criminal Rule 12(B).

mation that is not part of the record, and does not abrogate the responsibility personally to decide the matter." Jud. Canon 2.9(A)(3). However, "[a] judge may not permit the receipt of extra-judicial information about a case from anyone, including a colleague." *Cannon*, 866 N.E.2d at 773.

■ The comment to Rule 2.11 of the Judicial Code provides that

An independent judiciary requires that judges decide cases according to the law and facts, without regard to whether particular laws or litigants are popular or unpopular with the public, the media, government officials, or the judge's friends or family. Confidence in the judiciary is eroded if judicial decision making is perceived to be subject to inappropriate outside influences.

Finally, we note that judicial remarks disapproving or approving of a parties' arguments prior to a final ruling "ordinarily do not support a bias or partiality challenge." *Sturgeon*, 719 N.E.2d at 1182.

Contrary to the State's assertion, Judge Fleece indicated in his findings that he did *not* state at the status conference that the release of the petitioners was "necessary" to heal the community. In accordance with the order, it is apparent that Judge Fleece neither said nor implied that he intended to consider the "health" of the community in deciding the merits of the petition. Moreover, the State has misconstrued Judge Fleece's statement implying that he already had a predetermined result of a sentence reduction that it intended to reach. In particular, Judge Fleece expressly denied stating that the only question regarding the petitioners' release was "how" to get there with regard to a sentence modification. Rather, Judge Fleece specifically addressed the State's claim in his order and made it clear that the question was "if we get there," which referred to a sentence modification. Appellant's App. p. 98.

■ We also cannot say that Judge Fleece's preliminary conclusion that "the sentences were too harsh," which was based on the facts of the case and the legal record before it, amounted to personal bias against the State. As discussed above, Judge Fleece reviewed the petitioners' lengthy petition for post-conviction relief, affidavits, and the two hundred pages of exhibits. We agree with Judge Fleece, in that his preliminary legal assessment of the case amounted to a reasoned legal analysis that was based on the record before him. Thus, the State's contention that Judge Fleece's comments regarding the length of the petitioners' sentences fails. *See Sturgeon*, 719 N.E.2d at 1173 (holding that judicial remarks disapproving a party's arguments before a final ruling "ordinarily do not support a bias or partiality challenge").

■ Similarly, it is apparent that the trial court's statement that "everybody" believes the sentences were too harsh and the State would suffer no "negative feedback" from agreeing to a sentence modification, have been placed out of context. The Judicial Code provides that a judge should decide cases "without regard to whether particular law or litigants are popular or unpopular with the public [or] the media." Jud. Canon 2.4 cmt. 1. In our view, it is apparent that Judge Fleece made these comments in direct response to the State's purported refusal to discuss the merits of the case. Moreover, the comments amounted to a reasonable attempt to persuade the State to participate in the settlement process. Thus, we cannot say that Judge Fleece's comments amounted to bias or impartiality on this basis.

■ Judge Fleece also addressed the remaining allegations that the State set

forth in its motion for change of judge and observed his conversation with Judge Jacobi about the matter was brief and by "chance." *Id.* at 95. Notwithstanding these circumstances, we are of the view that the conversation indeed raises concerns about impartiality. Moreover, even though Judge Jacobi's comments had already been made public, those opinions were not part of the record. In short, Judge Fleece should not have initiated the conversation or entertained Judge Jacobi's opinions on the matter. However, Judge Fleece specifically informed the parties at the settlement conference that the conversation did not form the basis for any of his legal opinions in this matter. Thus, we cannot conclude that the conversation with Judge Jacobi renders a fair judgment impossible or that the State has established the required "rational inference of bias or prejudice" so as to warrant a change of judge. *Whitehead,* 626 N.E.2d at 803.

Finally, we reject the State's contention that Judge Fleece's comments and his preliminary assessment about the case were biased and impartial because they were purportedly made without any supporting facts. To the contrary, the record shows that three months prior to the settlement conference, the post-conviction briefing had been completed. As noted above, the record included exhibits, affidavits, and a number of pleadings. Upon review, Judge Fleece observed that several material facts were undisputed, including the petitioners' young ages when the offenses were committed and the fact that the circumstances of the crime reflected the petitioners' immaturity and impaired judgment. As a result, we agree with Judge Fleece's determination that his comments and assessment of the case were the result of "consideration of the filed pleadings and undisputed facts of the case" rather than bias, prejudice, and impartiality. Appellant's App. p. 98. *See Sturgeon,* 719 N.E.2d at 1182 (observing that a trial court's preliminary assessments disapproving or approving of a party's arguments before a final ruling fails to establish personal bias).

In sum, the State has failed to identify sufficient circumstances to support its contention that Judge Fleece's decision to deny the motion for change of judge amounted to an abuse of discretion. The facts that the State relies upon to support its claim of personal bias and impartiality directly conflict with Judge Fleece's findings. Although we agree that Judge Fleece and Judge Jacobi should not have engaged in conversation about the matter for the reasons expressed above, it is readily apparent that Judge Fleece reviewed the evidence before him, including the petition for post-conviction relief, pleadings filed in the case, and affidavits and exhibits, in rendering his preliminary legal assessment of the case. Thus, we reject the State's assertion that it has established that Judge Fleece exhibited personal bias or prejudice in this matter. As a result, we conclude that the State's motion for change of judge was properly denied.

The judgment of the post-conviction court is affirmed, and we remand this case for further proceedings consistent with this opinion.

BAILEY, J., and ROBB, J., concur.