Filed 5/19/22  Eiges v. All American Asphalt CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| STEPHEN EIGES, | B309241 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC648577) |
| v. |  |
| ALL AMERICAN ASPHALT, |  |
| Defendant and Respondent. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Reversed.

Law Office of Steve A. Hoffman and Steve A. Hoffman for Plaintiff and Appellant.

Murchison & Cumming, Edmund G. Farrell, and Matthew E. Voss for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff and appellant Stephen[1] Eiges used to live at a mobile home park in Gardena. Immediately to the south of his property was an office and warehouse park (the SVF Property).[2] Immediately to the west of his property was an auto yard operated under the name Westway Auto Dismantlers, Inc. (Westway). In February and March of 2015, respondent All American Asphalt (AAA) removed and replaced several thousand square feet of cement driveway at the SVF Property. Also in 2015, there was heavy machinery operating on the Westway property.

In a lawsuit he filed in 2017, Eiges alleged that dust both from AAA's driveway work on the SVF Property and heavy machinery operating on the Westway property made him ill and damaged his property. He sought damages under negligence, premises liability, trespass, and nuisance theories. In 2020, after taking discovery, AAA moved for summary judgment pursuant to Code of Civil Procedure section 437c,[3] on all of Eiges's claims on

---

[1] Appellant has been variously referred to herein as "Stephen," "Steven," and "Steve." We use the spelling from the caption in the trial court for consistency.

[2] We refer to this property as the SVF Property because SVF Broadway Center Corporation was respondent All American Asphalt's customer at the time All American Asphalt performed the work there. SVF Broadway Center Corporation is not a party to this action.

[3] Undesignated statutory references herein are to the Code of Civil Procedure.

the theory that "there is no evidence of Plaintiff's exposure to toxic cement dust for which AAA is responsible." Eiges opposed the motion and submitted evidence in support, including 10 exhibits attached to various declarations. AAA objected to nine of Eiges's 10 exhibits.

The trial court determined that AAA's summary judgment evidence was sufficient to shift the burden of production to Eiges. It sustained all of AAA's evidentiary objections and then ruled as follows on Eiges's negligence and premises liability claims: "Based on the court's rulings on the evidentiary objections, plaintiff has not provided substantial competent evidence to raise a triable issue of material fact that defendant breached a duty or that defendant was a substantial factor in causing plaintiff damages." It referred back to its conclusions on negligence and premises liability in disposing of Eiges's trespass and nuisance claims. Accordingly, it granted AAA's motion and entered judgment that Eiges take nothing from AAA.

On appeal, Eiges contends that the trial court erred by: (1) shifting the summary judgment burden to him; (2) admitting all of AAA's evidence to which he objected; (3) disregarding his declaration evidence which was not subject to objection; (4) excluding all of his evidence to which AAA objected; and (5) finding no triable issues of material fact exist. We reverse the judgment based on points (3), (4), and (5), and therefore need not address points (1) and (2).

## DISCUSSION

We review an order granting summary judgment de novo. (*Strobel v. Johnson & Johnson* (2021) 70 Cal.App.5th 796, 810 (*Strobel*).) In doing so, "we consider all the evidence set forth in the moving and opposition papers except that to which objections

3

have been made and *properly* sustained." (*Pipitone v. Williams* (2016) 244 Cal.App.4th 1437, 1452.) Accordingly, we first consider the trial court's rulings on AAA's evidentiary objections and then consider the merits of AAA's motion with the inclusion of evidence as to which AAA's objections should have been overruled.

## I. The Trial Court Erred in Sustaining AAA's Evidentiary Objections

Fourteen evidentiary objections were asserted below, two by Eiges and twelve by AAA. Without explanation, the trial court overruled both of Eiges's objections and sustained all of AAA's objections. The consequence of these rulings was devastating to Eiges's case. The trial court itself recognized that the rulings directly resulted in its finding that Eiges failed to "provide[] substantial competent evidence to raise a triable issue of material fact . . . ." We focus our review on the disposition of Eiges's objections and find error by the trial court.

### A. Standard of Review

The parties both recognize that we review the trial court's evidentiary rulings at the summary judgment stage for abuse of discretion. (*Ducksworth v. Tri-Modal Distribution Services* (2020) 47 Cal.App.5th 532, 544, overruled on other grounds in *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 932.) " 'An abuse of discretion will be "established by 'a showing the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.' " ' " (*People v. Johnson* (2022) 12 Cal.5th 544, 605–606.) " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action,

4

and to reversal on appeal where no reasonable basis for the action is shown. [Citation.]' " (*Westside Community for Independent Living, Inc. v. Obledo* (1983) 33 Cal.3d 348, 355.) Limits on a trial court's discretion take on heightened importance "when, as here, its exercise implicates a party's ability to present its case." (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773 (*Sargon Enterprises*).) We therefore carefully review whether the trial court's evidentiary rulings reflect a permissible exercise of judicial discretion.

## B. Discussion

Because the trial court failed to specify the rationale for its rulings, we are left to divine its reasoning on our own. We are at a loss to do so. The trial court's evidentiary rulings appear contrary to governing legal principles and prevented Eiges from presenting his case. For the reasons that follow, we find that, to the extent the trial court considered and exercised discretion in sustaining all of AAA's evidentiary objections, it abused that discretion.

### i. Did the Trial Court Adequately Consider AAA's Objections Before Sustaining Them?

The trial court's failure to explain why it categorically sustained AAA's objections, despite promising to do so, raises doubt as to whether its rulings were well founded. At the hearing on AAA's motion, Eiges asked the court to explain the grounds for its tentative ruling sustaining all of AAA's objections. This was necessary because AAA's objections were of the "kitchen sink" variety. Each included the same six generic

5

grounds[4] followed by one or more additional grounds that either (i) reiterated one of the generic grounds with minimal elaboration, or (ii) asserted some non-substantive failure (e.g., noncompliance with Cal. Rules of Court, rule 3.1350(g)). The trial court acknowledged that its tentative did not state the grounds but offered that, "you know, for one reason or another, all of them were sustained . . . ." After some colloquy that provided no definitive explanation as to why any particular objection was sustained,[5] the trial court said "[o]kay. The court will be more specific as to each objection and ground." But the court did not follow through on this commitment in its minute order.

---

[4] These were: "Insufficient foundation. (*Evid. Code* §§ 403, 405.) Calls for speculation. (*Evid. Code* §§ 702, 800.) Hearsay. (*Evid. Code* § 1200.) Manifestly Irrelevant. (*Evid. Code* §§ 210, 350, 351.) Writing is not properly authenticated. (*Evid. Code* §§ 1400, 1401.) Probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury. (*Evid. Code* § 352.)"

[5] Much of the discussion concerned Eiges's presentation of exhibits common to multiple declarations by attaching the exhibits after all of the declarations instead of to each one separately. The trial court seemingly endorsed this practice when, after Eiges's counsel explained "attaching the same exact photographs four times would have been a big, cumbersome waste," the court replied "[o]kay, thank you. I hear you on that one."

We recognize that trial courts are under no general obligation to state the reasons for their evidentiary rulings. (*Mora v. Big Lots Stores, Inc.* (2011) 194 Cal.App.4th 496, 512, fn. 15, disapproved on other grounds in *Noel v. Thrifty Payless, Inc.* (2019) 7 Cal.5th 955, 986, fn. 15.) However, under the particular facts here, a more detailed ruling would have been necessary to give us confidence that the court indeed exercised its discretion. (Cf. *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1447 (*Twenty-Nine Palms*) ["Although summarily ruling on numerous evidentiary rulings is a common labor-saving practice in law and motion courts, the objections in this case needed individual attention"].) This is not a case where the reasons for granting the objections were self-evident. Specifically, the rulings were dispositive in adjudging Eiges's claims against AAA, but AAA's objections were generic and included multiple grounds, making it impossible to determine the basis on which the trial court relied. Most of the summary judgment hearing concerned the evidentiary rulings but yielded no satisfactory explanation as to the basis for any, and the trial court promised to articulate a basis for its rulings but then failed to do so. Under these circumstances, we are deeply concerned that the trial court did not adequately consider AAA's objections in ruling on them.

Our concerns are validated by decisions of our sister courts addressing blanket rulings excluding summary judgment evidence where the successful objections included frivolous grounds. (See, e.g., *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 255–256 [trial court ruling that summarily sustained 763 out of 764 evidentiary objections, many of them frivolous, was abuse of discretion]; *Greenspan v. LADT LLC*

7

(2010) 191 Cal.App.4th 486, 522 (*Greenspan*) [abuse of discretion found where trial court's unexplained ruling sustaining all but one of defendants' objections to plaintiff's exhibits, where multiple objections were made to most exhibits, was "cryptic"]; *Twenty-Nine Palms*, *supra*, 210 Cal.App.4th at pp. 1447–1449 [sustaining all of plaintiff's evidentiary objections without reasoning constituted abuse of discretion where some of the objections were "unreasonable"].)  In effect, frivolous objections serve an unintended quality assurance function because sustaining them indicates that "the trial court did not consider the individual objections." (*Twenty-Nine Palms*, *supra*, at p. 1447.)[6]

Here, for the reasons more fully discussed below, many of the grounds AAA advanced for objection were frivolous, further indicating that the trial court inadequately considered AAA's objections.

We are also troubled by the appearance that the identity of the person making the objection, and not substantive merit, was determinative of the trial court's rulings.  In contrast to AAA's many frivolous but successful objections, Eiges made targeted, well-founded objections that were overruled (again without

---

[6]    The Supreme Court in *Reid v. Google* (2010) 50 Cal.4th 512 admonished litigants "to raise only meritorious objections to items of evidence that are legitimately in dispute and pertinent to the disposition of the summary judgment motion" and warned of "informal reprimands or formal sanctions for engaging in abusive practices." (*Id.* at p. 532.)  As shown in *Nazir*, *Greenspan*, and *Twenty-Nine Palms*, another potential consequence of making frivolous objections is introducing a new ground for reversal on appeal.

explanation).  Both of Eiges's objections included a hearsay objection to AAA documents that were not properly authenticated.  These documents—AAA's purported contract for work at the SVF Property and purported daily work reports for the same—were attached to a declaration of AAA's counsel declaring them "true and correct" copies of the originals but offering no other basis for their admission aside from a boilerplate claim of "personal knowledge of the facts stated in this declaration."

Of course, these documents are inadmissible hearsay unless subject to an exception.  (Evid. Code, § 1200, subds. (a), (b); *Faigin v. Signature Group Holdings, Inc*. (2012) 211 Cal.App.4th 726, 749.)  The only relevant exception for which the documents might qualify is the business records exception contained in section 1271 of the Evidence Code.  But none of the facts necessary to show the applicability of that section are found in AAA's counsel's declaration.  As such, the business exception was not established.  (See *Sanchez v. Hillerich & Bradsby Co.* (2002) 104 Cal.App.4th 703, 720 ["[Counsel's declaration] did not specify that he was the custodian of these exhibits, or that these documents were prepared in the regular course of business, or that he personally prepared these documents or knew of the conditions under which they were prepared so that he could verify their trustworthiness . . .  [¶]  The trial court correctly ruled that they were inadmissible"].)  A trial court's discretion in admitting or excluding evidence is bounded by the legal principles reflected in the Evidence Code.  (*Sargon Enterprises*, *supra*, 55 Cal.4th at p. 773.)  Holding one party, but not the other, to its requirements would not be a proper exercise of judicial discretion.

9

### ii The Trial Court's Rulings on AAA's Objections Were an Abuse of Discretion Because They Fell Outside the Limits of the Governing Legal Principles

*Objections Based on Format of Presentation (All Objections).*

Each of AAA's objections included some technical format ground. The only rule AAA cited in support of these format objections is California Rules of Court, rule 3.1350(g): "If evidence in support of or in opposition to a motion exceeds 25 pages, the evidence must be separately bound and must include a table of contents."

To the extent that Eiges failed to comply with California Rules of Court, rule 3.1350(g), it would not, standing alone, provide a basis for sustaining AAA's objections. We have held that noncompliance with rule 3.1350's separate statement requirements does not warrant an adverse summary judgment ruling absent extenuating circumstances, notwithstanding section 437c, subdivision (b)'s provision that "failure to comply with th[e] requirement of a separate statement may in the court's discretion constitute a sufficient ground" for granting or denying the motion. (See, e.g., *Collins v. Hertz Corp.* (2006) 144 Cal.App.4th 64, 74 [discussing cases].) This is *a fortiori* true for rule 3.1350(g) violations, as section 437c does not authorize an adverse ruling based on failure to properly bind exhibits. To the extent the trial court based its decision on rule 3.1350(g), it was an abuse of discretion.

*Objections to Deposition Excerpts (Objections 9–12)*

Eiges offered excerpts of depositions of Mitali Datta and Rodolfo Chacon, inspectors for the South Coast Air Quality

10

Management District (AQMD), and of Dr. Jennifer Chi-Ching Wang and Patricia Naylor, N.P., medical professionals that treated Eiges after the exposure alleged in his complaint. AAA's objections to these were on its six generic grounds and California Rules of Court, rule 3.1350(g) only. Tellingly, AAA makes no attempt to defend these objections on appeal. We do not see how it could. First, AAA's rote foundation, speculation, hearsay, and Evidence Code section 352 objections are entirely unsupported. To the extent they applied to any specific portion of the deponents' testimony, AAA did not specify (a violation of Cal. Rules of Court, rule 3.1354(b)). In any event, the objections plainly cannot apply to *all* of their testimony and the objections therefore could not serve as a basis for excluding the deposition transcripts entirely. (See *Ambriz v. Kelegian* (2007) 146 Cal.App.4th 1519, 1528 (*Ambriz*) ["As to respondents' objections on the grounds of improper opinion, lack of foundation and speculation, at least some portion of the proffered deposition testimony did not constitute improper opinion, did not lack foundation, and did not call for speculation . . . . The court should not have excluded this evidence."].)

The deposition transcripts were also plainly relevant. Indeed, AAA thought that Inspectors Datta's and Chacon's testimonies were sufficiently relevant to offer excerpts of the same in support of its motion. AAA cannot be heard to make a blanket relevance objection to Eiges offering additional context for those excerpts that AAA offered. As to the declarations of Eiges's healthcare providers, testimony that Eiges developed new symptoms consistent with cement dust exposure at the time he alleges AAA was generating cement dust that came into his home could hardly be more relevant to his claims.

Finally, as to authentication, Eiges authenticated each deposition transcript either through the declaration of his counsel that attended the deposition; by including the reporter's certificate; or both. (See *Greenspan, supra*, 191 Cal.App.4th at p. 523 [attorney authentication and reporter certification acceptable alternative means of deposition transcript authentication].) Moreover, with respect to Datta's and Chacon's deposition excerpts, AAA "[r]aising an objection as to lack of authentication of an excerpt from the same deposition [AAA] relied upon in [its] motion is disingenuous." (*Ambriz, supra*, 146 Cal.App.4th at p. 1527.)

The trial court abused its discretion in excluding Exhibits G, H, I, and J of Eiges's counsel's declaration in opposition to AAA's motion.

*AAA's Objections to Eiges's Photographs and Videos (Objections 1–4)*

Eiges offered three photograph exhibits and eight videos as evidence that AAA generated "cement dust" and Westway generated "airborne powder which looked like smoke," each of which entered Eiges's home. AAA made its generic objections to these, embellished with the assertion that they lack foundation because Eiges "fails to state the date" any were taken.

On appeal, AAA does not explain how the photographs and videos are objectionable except that "no foundation for any of the photographs or video clips was properly laid" and that they are "inadmissible." These assertions, unsupported by any authority, are unhelpful. In contrast, Eiges argues that he met the flexible photograph authentication requirements articulated in *People v.*

12

*Goldsmith* (2014) 59 Cal.4th 258[7] by declaring that he took the photographs during a specified time period and that they depict activities on parcels adjoining his home and items in his home. We agree with Eiges.

First, a proponent need not provide the precise date that a photograph was taken in order to authenticate it. (*Smith v. ACandS, Inc.* (1994) 31 Cal.App.4th 77, 92, disapproved on other grounds in *Camargo v. Tjaarda Dairy* (2001) 25 Cal.4th 1235, 1245, [testimony that photograph showed working conditions in industrial plant sufficient foundation even without identification of exact date and place depicted].) Second, Eiges *did* provide date information that was sufficient under the circumstances to both authenticate the photographs and show their relevance. He declared that he saw AAA workers using heavy equipment and blowing cement dust onto his property "[d]uring the period of about February 14, 2015 through March 2015." He then explains that his photographs and videos of AAA workers were taken "[o]ver time, on different days." Obviously, he could only have taken the photographs of AAA workers on the days that he saw

---

[7]    "A photograph or video recording is typically authenticated by showing it is a fair and accurate representation of the scene depicted. [Citations.] This foundation may, but need not be, supplied by the person taking the photograph or by a person who witnessed the event being recorded. [Citations.] It may be supplied by other witness testimony, circumstantial evidence, content and location." (*People v. Goldsmith, supra,* 59 Cal.4th at pp. 267–268.)

AAA workers on the jobsite.[8]  Thus, his testimony is that he took the photographs and videos of AAA workers during the period of about February 14, 2015, through March 2015.  As this approximate date range aligns with the dates that AAA claims it was working at the SVF Property (February 19, 2015 through March 16, 2015), which AAA's own evidence shows is adjacent to Eiges's property, we see no reason for greater date exactitude to justify admission of the evidence.  This placed an undue hurdle before Eiges in making his case.  To the extent that the trial court excluded the photographs based on its erroneous finding that "Plaintiff only gave a range of time of March 2015 and 2016 as the date on which the photos and video were taken," this was

---

[8]     In addition to asserting there was no foundation for the photographs, AAA also contends on appeal that it objected to the content of Eiges's declaration and two other declarations he submitted in opposition to AAA's summary judgment motion.  By rule, all written objections must be made in a separate evidentiary objection.  (Cal. Rules of Court, rule 3.1354(b).)  We have carefully reviewed AAA's separate evidentiary objection, which is entitled "Defendant, All American Asphalt's Objections *to Exhibits* Offered as Evidence in Support of Plaintiff's Opposition to Motion for Summary Judgment" (italics added), and find no objection to the substance of these declarations.  Nor does AAA provide a record citation to any objection to the substance of these declarations.  And, the trial court's minute order does not reflect that it ruled on any such objection.  Whatever merit may lie in AAA's criticism of these declarations, including that Eiges lacked foundation to identify the workers on the SVF Property as AAA employees or that their work was the source of the dust that sickened him, AAA waived any objection by failing to properly raise it below.  (§ 437c, subd. (b)(5).)

also an abuse of discretion. (*People v. Surplice* (1962) 203 Cal.App.2d 784, 791 ["To exercise the power of judicial discretion all the material facts in evidence must be both known and considered . . . ."].)

Having been properly authenticated with a sufficient foundation, we do not see how the trial court could have sustained AAA's objections to the photographs and videos on AAA's other stated grounds. They are plainly relevant to show the dust intrusion that is at the heart of Eiges's claims. They are not hearsay because photographs and video images that depict non-communicatory conduct are not statements. (See Evid. Code, § 1200 [defining "hearsay" as out-of-court "statement"]; § 225 [defining "statement" as "oral or written verbal expression or . . . nonverbal conduct of a person" intended as a substitute for oral or written expression]; *People v. Garton* (2018) 4 Cal.5th 485, 506 ["photographs are not statements"].) And we simply see no basis for AAA's speculation and Evidence Code section 352 objections, and neither AAA nor the trial court suggested any.

The trial court abused its discretion in excluding Exhibits A, B, C, and D of Eiges's declaration in opposition to AAA's motion.

*AAA's Other Objections (Objections 5–7; 8)*

Some of the photographs that Eiges authenticated were also referenced in other declarations. AAA objected that those declarations failed to authenticate the photographs (along with its other generic grounds) and the trial court sustained the objections (Objections 5–7). It is unnecessary for us to address these rulings because we find those photographs should have been admitted pursuant to Eiges's declaration.

15

Eiges also submitted a purported Google Maps printout to which AAA made its generic objections and the trial court sustained the objection (Objection 8).  Eiges concedes this printout is unnecessary to present his case, i.e., it is not a material fact, so we do not review the trial court's decision to exclude it.

## II.     The Trial Court Erred in Granting AAA's Motion for Summary Judgment

### A.     Standard of Review

On appeal of summary judgment in favor of a defendant, we exercise de novo review.  "We independently review the papers supporting and opposing the motion" (*Jimenez v. 24 Hour Fitness USA, Inc.* (2015) 237 Cal.App.4th 546, 553–554), and " ' " 'must decide independently whether the facts not subject to triable dispute warrant judgment . . . as a matter of law. [Citations.]'  [Citation.]  Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate [the] plaintiff's claims." ' [Citation.]  We ' "accept as true the facts . . . in the evidence of the [plaintiff] and the reasonable inferences that can be drawn from them." ' [Citation.]  And in undertaking our analysis, ' "we must ' "view the evidence in the light most favorable to [the plaintiff[]] . . ." and "liberally construe [the plaintiff['s]] evidentiary submissions and strictly scrutinize [the] defendant['s] own evidence, in order to resolve any evidentiary doubts or ambiguities in [the plaintiff['s]] favor." ' " ' [Citation.]"  (*Strobel, supra,* 70 Cal.App.5th at p. 810.)

Summary judgment must be denied when "genuine" or "triable" issues of material fact remain—that is, when "the evidence would allow a reasonable trier of fact to find the

16

underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 845.)

## B. Discussion

AAA moved for summary judgment on the grounds that "there is no evidence of [Eiges's] exposure to toxic cement dust for which AAA is responsible." More particularly, it claimed "[Eiges] cannot demonstrate that fugitive dust traveled from the SVF [Property], the area in which AAA was working, to [Eiges's home]." Absent any such evidence, AAA continued, Eiges cannot establish the breach or cause elements of negligence or premises liability; the occupation or cause elements of trespass; or the predicate invasion of Eiges's property necessary to sustain a nuisance claim. We disagree given the record evidence of the following facts:[9]

---

[9] Our recitation of these facts includes references to Eiges's declaration submitted in opposition to AAA's motion. We agree with Eiges's third point of error that the trial court erred in weighing, discounting, disregarding, or excluding this and other declaration testimony, as to which AAA had made no objection, in granting AAA's motion. (See *Avivi v. Centro Medico Urgente Medical Center* (2008) 159 Cal.App.4th 463, 467 ["When deciding whether to grant summary judgment, the court must consider all of the evidence set forth in the papers (except evidence to which the court has sustained an objection), as well as all reasonable inferences that may be drawn from that evidence, in the light most favorable to the party opposing summary judgment"].) We do not repeat the trial court's error in our de novo review so the point merits no further discussion.

On January 27, 2015, Eiges saw Dr. Wang, his family medicine doctor, and had no pulmonary symptoms. Indeed, prior to the exposure complained of, he had not had any respiratory symptoms since the 1960's.

On February 14, 2015, Eiges noticed construction starting on the SVF Property. He does not recall the first day he noticed dust coming from the SVF Property but it was after February 14. He did notice concrete dust coming from the SVF Property not later than February 19, 2015, when he called the AQMD. The AQMD recorded his complaint as " '[c]oncrete dust in neighborhood. White dust making ill, Gardena.' " AAA, which had contracted to perform "Concrete Drive Replacement" ' at 15621 South Broadway (the SVF Property), was there that day "jackhammer[ing] concrete 3 feet deep" to locate gas lines and "scarify[ing] top 12 [inches]" of some surface.

On February 20, 2015, AQMD Inspector Datta went to investigate Eiges's complaint. However, she went to 15507 Broadway instead of 15621 South Broadway. Having visited a location that AAA was not working, she unsurprisingly "witnessed no activity at the site." Had she gone to 15621 South Broadway on that day, she would have witnessed AAA workers engaged in "saw cutting" and more "scarify[ing]."

On February 28, 2015, Eiges again complained to the AQMD, which recorded his complaint as about "a construction site next door causing powder dirt, and his home is full of dirt. The fence has been removed and dust all over his property." On that particular day, AAA was "scarify[ing]" again and "plac[ing] 2 [feet] of new fill." Because of the poor subgrade in some sections, AAA workers "also spread[] powder cement into base to add extra strength."

18

AQMD did not investigate Eiges's February 28 complaint until a few days later, about March 4, 2015. That time Inspector Datta's records show she went to a "[c]onstruction site on Redondo Beach Boulevard, Gardena, California"—again not the address of the SFV Property—and found that that site (whatever it may have been) was "[o]perating in compliance."

Eiges made another complaint on March 4, 2015, which Inspector Datta described as being about "fugitive cement dust." When Inspector Datta investigated this complaint the next day, she encountered " 'All American Asphalt[]' " workers engaged in paving activity—she had found the SVF Property. She spoke with Eiges[10] who, per her report, told her " 'that the dust from the paving of an alley directly south of [his] property was coming into his home and causing health issues.' " Eiges " 'also showed [her] the area where the fence separating the two properties was broken[,] causing dust [to come] into the area.' " Inspector Datta did not " 'see any fugitive dust in the air' " at that time, but did inform Victor Correa, an AAA supervisor, of Eiges's dust complaint.[11] Correa told her " 'that he was trying to keep everything wet in order to mitigate the dust' " and " 'offered to fix the broken fence at the property line in order to contain any dust from the paving work.' " However, AAA never fixed the fence.

---

[10] Although Inspector Datta was "not sure" whether Eiges was the complainant she spoke with, AAA concedes that, "[a]side from Plaintiff's, there were no other complaints regarding fugitive dust from the SVF Project site made to the AQMD."

[11] AAA's daily work reports show that Victor Correa was on the jobsite for 10 hours that day. The "field notes" portion of that report reflects no interaction with AQMD (it is blank).

The same day Eiges told Inspector Datta AAA's cement dust was causing him health issues, and on March 5, 2015, he was seen by Dr. Wang at Kaiser Permanente. He complained to Dr. Wang "about exposure to breathing in concrete dust." Dr. Wang confirmed, based on her history of seeing Eiges, that his "very first" pulmonary symptoms began "when he had started the concrete dust exposure." Even though she believed he had underlying *conditions* relating to a history of smoking and asthma, "[h]e had no symptoms before he was exposed to concrete dust." On this basis, Dr. Wang considered his concrete dust exposure was "more probably than not" the trigger of his pulmonary symptoms.

Eiges took steps to document the dust intrusion into his home. On various dates in February and March 2015, he took photographs and videos of AAA workers "blowing big clouds of cement dust" which he declares entered his home. While the referenced photographs and videos show light-colored airborne dust above the SVF Property, they do not clearly show airborne dust crossing the property line.[12] However, Eiges also provides photographs of certain "home items coated with AAA's blown cement dust." Consistent with our standard of review, we reasonably infer from the evidence that this dust entered his home by crossing the property line.

---

[12] Video clip number 7 shows airborne dust crossing the property line over a broken fence, but Eiges's testimony appears to be that this occurred after AAA was no longer working at the SVF Property.

These facts would manifestly allow a reasonable trier of fact to find, by a preponderance of the evidence, that AAA's cement entered Eiges's property and caused him the harms claimed. Perhaps anticipating this, AAA attempts to negate this evidence. However, its efforts only underscore the need for a trial to resolve disputes about the facts.

First, AAA asserts that it could not have been the source of the dust because it was at the SVF Property only from February 19, 2015, to March 16, 2015, but Eiges claimed the dust came towards his house before this—"on February 14, 2015"—and continued after—"daily until June 2015." This is a patent misrepresentation of Eiges's testimony. What Eiges said at his deposition is that *construction* started on February 14 but the dust began later. AAA's counsel questioning him at the deposition understood this nuance:

"[Eiges]:     February 14, it was a Saturday, Valentine's day, is the day the construction started.

[Counsel]:  Right. But when did you first notice the dust?

[Eiges]:     I'm going to say the beginning of March."

Further, it is plausible that there was activity at the SVF Property, such as erecting temporary fencing, that preceded AAA's arrival. Indeed, AAA's daily work reports show a temporary fence was removed on March 11, 2015, but no earlier report shows that such a fence was erected.

Nor did Eiges testify "that the cement dust came toward his home continuously until June 2015." He did say the "cement dust [was] coming . . . daily" but did not specify when or for how long. He specified June 2015 only as the date through which the "dust *contamination* lasted." (Italics added.) The continued presence of AAA's dust does not require AAA's continued

21

presence at the SVF Property.

AAA also argues that AQMD's failure to witness a dust rule violation proves that AAA did not commit one. AAA fails to explain the logic of how evidence that one witness did not observe dust *negates* evidence that another witness observed dust. Strictly construing AAA's evidence, we can discern that AQMD visited the SVF Property just once while AAA was working there.[13] During that visit, though the inspector observed no airborne dust actively crossing the property line, she did see an " 'area where the fence separating the two properties was broken causing dust [to come] into the area.' " For summary judgment purposes we infer that, as dust does, it traveled by air to get there. Moreover, the AAA supervisor at the site acknowledged the dust problem, explaining " 'he was trying to keep everything wet in order to mitigate the dust' " and " 'offered to fix the broken fence at the property line in order to contain any dust from the paving work.' " Finally, the record does not show whether Eiges's subsequent complaints to AQMD after AAA had allegedly completed the job were about airborne dust or residual dust on his property.

---

[13] The evidence indicates that during the same period AQMD twice visited an incorrect location—15507 Broadway on February 20, 2015, and a "[c]onstruction site on Redondo Beach Boulevard" on March 4, 2015. Moreover, AQMD's sole confirmed visit to the site during the time AAA was working there was on a different day than Eiges complained to AQMD, meaning that the activities that day may have been different than the activities on the day of the complaint.

Similarly, AAA argues that the absence of complaints from persons other than Eiges shows that there was no intrusion into his mobile home park. First, the absence of complaints does not negate the presence of a hazardous condition. (Cf. *Eriksson v. Nunnink* (2011) 191 Cal.App.4th 826, 850 [that trainer had received no complaints about a horse's fitness for competition did not negate possibility that trainer knew horse was unfit].) Second, two of Eiges's neighbors signed declarations that cement dust was being blown over a fence onto their property "in the earlier part of 2015" and that it gave them coughs and affected their breathing.

Finally, AAA intimates that the presence of dust from the Westway property renders Eiges unable to show AAA was the cause of his injuries. We disagree. There is substantial evidence to support a conclusion that AAA's dust generated in jackhammering, saw cutting, and scarifying existing cement and "spread[ing] powder cement" caused Eiges's illness. First, the evidence would permit the conclusion that only AAA created cement dust. Whereas Eiges's photographs show AAA's cement dust was light gray, they show Westway's "powder which looked like smoke" was dark grey, i.e., different than AAA's cement dust. The testimony and photographic evidence could thus support the conclusion that Westway's substance was something other than cement dust. Second, Eiges and his doctor each testified that he began experiencing pulmonary symptoms while AAA admits it was working on the SVF Property. While this temporal connection is not enough to show causation (see *Sanderson v. Int'l Flavors & Fragrances* (C.D.Cal. 1996) 950 F.Supp. 981, 985 [applying California law]), Eiges's doctor confirmed that his symptoms were consistent with concrete dust exposure, and that

concrete dust exposure was more likely than not the cause of his symptoms given the timing of the onset.

None of this is to say that the evidence would *compel* a finding that AAA's cement dust entered Eiges's home and sickened him. A reasonable fact finder could certainly find to the contrary. But Eiges is not the summary judgment movant. Eiges submitted admissible evidence that would allow a trier of fact to find in his favor on the issues for which AAA said he lacked evidence. With that showing, he was entitled to denial of the summary judgment motion. We need not address whether any of AAA's evidence should have been excluded.

## DISPOSITION

The judgment of the trial court is reversed, and the case remanded for proceedings consistent with this opinion. Costs are awarded to Eiges.

HARUTUNIAN, J.[*]

We concur:

STRATTON, P. J.

GRIMES, J.

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.